Susie A. Radcliffe v. City of Lewiston.

Androscoggin.   Opinion October 7, 1912.

*Accident.   Contributory Negligence.   Damages.   Defect.   Exceptions.*
*Motion.   Negligence.   Notice.   Substitute for Road Commissioner.*

1. The alleged defect was a hole between two planks of the sidewalk into which the plaintiff stepped her heel and was thereby thrown upon the walk. The testimony of the witnesses for the plaintiff and the defendant, as to the size of the hole, varied from 6 inches in length by 3 1-2 inches in width to 10 inches in length by 1 7-8 inches in width. *Held;* whether the jury determined the size of the hole to be precisely as claimed by plaintiff or defendant may not be very material, for they were justified in finding that it was large enough at least for a woman's heel to go down into it easily. And it was for them to decide whether this sidewalk on the bridge between the cities of Lewiston and Auburn, with such a hole in it, was defective within the meaning of the statute—or, in other words, was not safe and convenient for travel over it. Their decision was that it was defective and in the opinion of the court that decision was justified by the evidence.

2. One of the essentials required by R. S., Ch. 23, Sec. 76, to be shown by the plaintiff in order to maintain an action for damages for injuries received by reason of any defect or want of repair of a highway or town way against the county or town required by law to keep the way in repair is that the commissioners of such county, or the municipal officers, or road commissioners of such town, or any person authorized by any commissioner of such county, or any municipal officer or road commissioner of such town to act as a substitute for either of them had twenty-four hours' notice of the defect, or want of repair before the accident. Whether Hiram T. Spencer was authorized to act as a substitute for the road commissioner of Lewiston, within the meaning of the statute, and whether he had twenty-four hours' actual notice of the alleged defect were questions of fact for the jury and the evidence justified the jury in deciding these questions in the plaintiff's favor.

On motion and exceptions by defendant.   Overruled.

This is an action to recover damages for personal injuries alleged to have been caused by a defect in the sidewalk on the south side

of the North Bridge connecting Lewiston and Auburn, which side-walk the city of Lewiston was bound to maintain and keep in repair. Plea, the general issue. The jury returned a verdict for the plaintiff for fifteen hundred dollars.

The defendant filed a general motion for a new trial and excep-tions to certain portions of the charge to the jury. The case is stated in the opinion.

*George C. Webber,* for plaintiff.

*Fortunat Belleau,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, KING, HALEY, JJ.

KING, J. Action to recover damages for personal injuries alleged to have been caused by a defect in the sidewalk on the south side of the North Bridge connecting Lewiston and Auburn, which side-walk the city of Lewiston was bound to maintain and keep in repair. The jury returned a verdict of $1500 for the plaintiff and the case is before this court on defendant's motion and exceptions.

The defendant's contentions under its motion, as stated in the brief of its counsel, may be thus summarized: that there was no such defect in the sidewalk as claimed by the plaintiff; that if there was any such defect the defendant did not have actual notice thereof at least twenty-four hours before the accident as required by statute; that if such defect existed the plaintiff had knowledge of it, and was guilty of contributory negligence; and finally that the plaintif was not injured to the extent claimed, and that the damages awarded are excessive.

1. The alleged defect was a hole between two planks of the sidewalk into which the plaintiff stepped her heel and was thereby thrown upon the walk. In her examination the plaintiff expressed her judgment of the size of the hole by "indicating 6 inches by $3\frac{1}{2}$." The lady who was walking with the plaintiff at the time of the accident described the hole as "large enough for a woman's heel to go down into it easily,—a good sized heel—that is the hole itself." Benjamin S. Young, who assisted in getting the plaintiff into a team and taking her home after the accident, gave his judgment of the size of the hole as "six inches long and three or four inches wide."

In behalf of the defendant Mr. Ryan, Superintendent of Public Works of Lewiston, testified that he measured the hole and it was "scant two inches in the widest place" and ten inches long. Hiram T. Spencer who put a patch over the hole after the accident, under the direction of Mr. Ryan, gave the size of the hole as "about an inch and seven-eighths, the widest place." Cornelius C. Cronin and Daniel E. Murphy, members of the Public Works Commission of Lewiston, called by defendant, testified respectively that the size of the hole in its widest part was "two inches" and "scant two inches."

It was for the jury to ascertain from the evidence as to the size and location of the hole, and then to determine if it was a defect in the sidewalk.

Whether they determined the size of the hole to be precisely as claimed by plaintiff or defendant may not be very material, for they were undoubtedly justified in finding that it was large enough at least for a woman's heel to go down into it easily. And it was then for them to decide whether this sidewalk on the bridge between the cities of Lewiston and Auburn, with such a hole in it, large enough at least to admit the heel of a woman's shoe, was defective within the meaning of the statute,—or, in other words, was not safe and convenient for the travel over it. Their decision was that it was defective, and in the opinion of the court that decision was justified by the evidence.

2. It is provided by Statute (R. S. Ch. 23, Sec. 76), as one of the essentials required to be shown, in order to maintain an action for damages, for injuries received by reason of any defect or want of repair of a highway or town way, against the county or town required by law to keep the way in repair, that "the commissioners of such county, or the municipal officers or road commissioners of such town, or any person authorized by any commissioner of such county, or any municipal officer, or road commissioner of such town, to act as a substitute for either of them, had twenty-four hours actual notice of the defect or want of repair" before the accident.

Upon this branch of the case the issues were, whether Hiram T. Spencer was authorized to act as a substitute for the road commissioner of Lewiston within the meaning of the statute, and

whether Spencer had twenty-four hours actual notice of the alleged defect.   It appears that Lewiston had no road commissioner as such, but that Mr. Ryan, the Superintendent of Public Works, had the care and superintendence of the streets and was vested with the same power and charged with the same duties with respect to the streets, sidewalks and bridges in Lewiston as a road commissioner of that city would have been.   Mr. Spencer testified that his duties with respect to the bridges in Lewiston were "To inspect them, and fix them; keep them in repair," and that he received his authority from "the Superintendent," Mr. Ryan, and that he inspected the bridges, including the sidewalk in question, "twice a week."   Mr. Ryan also testified that Spencer was authorized by him to inspect the bridges as often as twice a week and "if he finds anything that needs repairing, to repair it."

It was the duty of Mr. Ryan as the Superintendent of Public Works of Lewiston to see that all the town ways, streets, sidewalks and bridges in the city were kept in suitable repair.   And to this end frequent inspections were necessary for the timely discovery of such defects and want of repair as might exist.   All this he could not do personally, and it was therefore necessary for him to authorize others to act as his substitute.   It was a question of fact for the jury whether Mr. Spencer was authorized by Mr. Ryan to act as a substitute for him in inspecting and keeping in repair the sidewalk in question.   And we think the evidence fully justified the jury in deciding this question in the plaintiff's favor.

Again, is was for the jury to determine whether Spencer had the twenty-four hours' actual notice of the hole in the sidewalk. It was not claimed that any one notified him of the hole, but the plaintiff contended that Mr. Spencer must have seen the hole, since it was shown by three or four witnesses that the hole had existed for three or four weeks, and had been observed by them as they walked along the sidewalk, and that Mr. Spencer had inspected the sidewalk twice a week during all that time.   As to his inspections Mr. Spencer said: "I generally go over those bridges Mondays— sometimes I can't get over Mondays, and I go Tuesdays—and Saturdays.   There aint a Saturday but what I go over them.   No matter what the work is, every Saturday I go over every bridge." The plaintiff was injured on Tuesday, June 20, 1911, and Spencer

testified that he had no notice or knowledge of the existence of the hole before that time.

This issue of notice was submitted to the jury with clear and pertinent instructions, in which they were told that it was not enough for them to find that Spencer might have seen the hole by the exercise of reasonable care, but that the jury must be satisfied by the evidence that he did see it. We think the jury's finding upon this issue must stand. It was a question for them to decide whether Spencer did see the hole, and we find nothing to indicate that they misunderstood that question.

3.   We find nothing in the evidence sufficient to sustain the contention that the plaintiff knew of the existence of the hole in the sidewalk before her accident. She says she had no previous knowledge of it, and that she had not passed over the sidewalk very frequently, and did not remember when she had been over it before in the daytime. It appears that at the time of the accident she was walking as usual, and there is nothing to indicate that she was not in the exercise of reasonable care.

4.   The plaintiff is shown to have received a violent fall. No bones were broken, but she sustained a severe nervous shock. Dr. S. E. Sawyer who was immediately called found her in an extremely nervous condition, partly unconscious, and vomiting. He testified that "she complained very bitterly of her back in trying to move her about to see if she had sustained any fractures or not." Dr. Renwick, who was called the second day after the accident, in the absence of Dr. Sawyer, found the plaintiff still vomiting which indicated to him that the plaintiff had sustained "An awful shock; and she was suffering a great deal of pain." As to her recovery he said: "I should expect it would take a long time to recover from the injury. She might have very grave symptoms, varying from time to time; but the thing you would be absolutely sure of, she would be a long time recovering from the injury." Dr. William Ness, who examined the plaintiff in April 1912—nine months after the accident—found "that there is trouble with the appendix, or right ovary, or both," which "is the result of mechanical disturbance"—the result of injury rather than disease. The plaintiff claimed that at the time of the trial she was still suffering pain as the result of her injuries, that she was unable to do even her work

about the house, and was still under the doctor's care. After an examination and consideration of all the evidence relating to the nature and extent of the plaintiff's injuries we do not feel that the damages awarded by the jury are so manifestly excessive that a new trial should be granted.

5. The defendant's exceptions are not particularly urged in argument. But the court finds no ground on which they could be sustained. The instructions complained of were appropriate and unobjectionable.

*Motion and exceptions overruled.*